IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-HC-2015-BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| JOSE DE LA LUZ PEREZ, | ) | |
| | ) | |
| Respondent. | ) | |

On 25 January 2011, petitioner United States of America ("the government") initiated this proceeding seeking to have respondent Jose De La Luz Perez ("respondent") civilly committed as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), codified at 18 U.S.C. §§ 4247-4248. Pursuant to 18 U.S.C. § 4247(d), the court conducted an evidentiary hearing in this matter on 16 October 2012.

## I. BACKGROUND

Respondent was sixty-six years old at the time of the evidentiary hearing. With regard to his sexual history, in September 1970, respondent was arrested for abducting a seven-year-old boy at a laundromat in San Antonio, Texas. (Gov't Exs. 1 at 4-5; 3 at 7-8; 14 at 002173.) Respondent drove the boy to a motel located several miles west of San Antonio, where he forced the boy to participate in oral sodomy with him numerous times during the course of the night. (Id.) The next morning, respondent drove the victim to within fifteen blocks of the victim's home and put him out on the street. (Id.) Respondent was convicted of Kidnapping of Minor to Conceal from Parent and sentenced to 25 years imprisonment. (Id.) He was released on parole in May 1979. (Id.)

In May 1982, an off-duty police officer was working security at a mall when the mother of a nine-year-old boy reported that respondent made sexual contact with her son in a dressing room. (Gov't Exs. 1 at 5-6; 3 at 6-7.) When the police officer accompanied the nine-year-old boy to the dressing room to view the scene of the incident, respondent was found in the same dressing room with a twelve-year-old boy. (Id.) The nine-year-old victim positively identified respondent as the abuser, and the twelve-year-old victim reported that respondent had followed the same pattern of enticement and touching as he had with the nine-year-old victim. (Id.) Respondent approached both boys and offered them money to try on jeans, suggesting that they were the same build as respondent's nephew, for whom respondent was shopping. (Id.) When the two victims complied with his request, respondent entered the changing room with them and asked how the jeans felt. (Id.) Respondent put his hands down the boys' pants and felt their genitals, patted their buttocks, and asked them to bend over and touch their toes. (Id.)

Respondent was arrested at the time of the offense in May 1982. (Id.) He was placed on bond and then managed to evade detection for several years following the indictment date. (Id.) He was eventually apprehended in March 1987. (Id.) The charge involving the nine-year-old victim was dismissed because the child could not be located, but respondent was convicted in November 1987 of the charge of Indecency with a Child with One Prior Conviction of a First Degree Felony in relation to the twelve-year-old victim. (Id.) Respondent was sentenced to five years imprisonment in Texas. (Id.) He was paroled in February 1989 and was discharged from parole in August 1992. (Id.; see also Gov't Ex. 14 at 002174.)

After absconding from the authorities in 1982, respondent was convicted of Indecency with a Child and sentenced to five years of probation in March 1983 in Texas. (Gov't Exs. 1 at

6; 3 at 5-6; 9; 14 at 002174.) He was convicted under the name of Rodolfo Mendoza, which was an alias. (Id.) In relation to this offense, respondent entered a woman's apartment in November 1982 and sold her a subscription to a television channel. (Gov't Exs. 1 at 6; 3 at 5-6.) Respondent then left the home, but returned a short time later, asking to use the telephone. (Id.) While he was on the telephone, the woman told her ten-year-old son to take the trash out to the dumpster in the parking lot. (Id.) Respondent then finished his telephone conversation, left the apartment, and approached the boy by the parking lot dumpster. (Id.) Respondent pinched and rubbed the child's buttocks, touched him on the front of his pants, and told him to unzip his pants. (Id.) The victim was instructed not to tell anyone about what happened. (Id.)

Respondent was most recently arrested on 9 September 1993 when agents from the Immigration and Naturalization Service executed a search warrant at his house in Texas. (Gov't Exs. 1 at 6; 3 at 4-5; 14 at 002165-002168.) They found two boys, ages twelve and thirteen, who were living with respondent and his father. (Id.) The boys were Mexican citizens and were living in the United States illegally. (Id.) Inside the house, agents also found hard core and soft core pornography materials. (Id.)

Interviews with the boys revealed that they had been living with respondent and his father for approximately two years, after respondent picked them up on the street in El Paso, Texas. (Id.) The twelve-year-old boy reported that respondent began sexually abusing them the very next day. (Id.) The reported sexual abuse involved anal intercourse and occurred in several locations besides the home, including locations in the state of New Mexico. (Id.) Respondent also transported the boys to and from Mexico on several occasions. (Id.) At least three other children were interviewed during the investigation and reported that respondent had sexually

3

molested them. (Id.) Medical evaluations of the two reported victims revealed signs consistent with chronic perianal trauma. (Id.)

Although respondent was initially indicted on fifteen charges, the majority of these charges were subsequently dismissed. (Gov't Exs. 1 at 6; 3 at 4-5; 14 at 002161-002165.) On 24 November 1993, respondent pled guilty to Transportation of a Minor in Foreign Commerce with Intent to Engage in Aggravated Sexual Assault and to Importation of an Illegal Alien for the Immoral Purpose of Sexual Assault.[1] (Gov't Exs. 1 at 6; 3 at 4-5; 8.) He was sentenced in the Western District of Texas to 120 months imprisonment on each charge, to be served consecutively. (Id.) He was also sentenced to three years of supervised release, but no special conditions of supervision are noted on the judgment. (Id.)

Respondent has no juvenile or adult criminal history other than the offenses that have been described above, and he has not received any major disciplinary infractions during his periods of incarceration. (Gov't Exs. 1 at 4; 3 at 11; 6 at 4; 10.)

## II. DISCUSSION

The Adam Walsh Act provides for the civil commitment of "sexually dangerous person[s]." 18 U.S.C. § 4248. Under 18 U.S.C. § 4247(a)(5), a "sexually dangerous person" is one "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." A person is "sexually dangerous to others" if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6); see also United States v. Wooden, 693 F.3d 440, 442 (4th

---

[1] Respondent's father also pled guilty to two charges relating to this matter. (Gov't Ex. 14 at 002165.)

4

Cir. 2012).

Under the Adam Walsh Act, the government has the burden of proving that respondent is sexually dangerous by clear and convincing evidence. 18 U.S.C. § 4248(d). "The clear and convincing evidence standard is an 'intermediate standard,' lying somewhere 'between preponderance of the evidence and proof beyond a reasonable doubt.'" United States v. Hunt, 643 F. Supp. 2d 161, 179 (D. Mass. 2009) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). The government must produce "'[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" Id. (alteration in original) (quoting Black's Law Dictionary 596 (8th ed. 2004)).

Thus, in order to prove that respondent is a "sexually dangerous person," the government must prove three elements by clear and convincing evidence: (1) that respondent engaged in or attempted to engage in sexually violent conduct or child molestation; (2) that respondent suffers from a serious mental illness, abnormality, or disorder; and (3) that, as a result of the serious mental illness, abnormality, or disorder, respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if he were to be released. See 18 U.S.C. § 4247(a)(5)-(6); 18 U.S.C. § 4248.

Three experts testified at the evidentiary hearing. Hy Malinek, Psy.D., and Heather Ross, Ph.D., testified on behalf of the government. Joseph J. Plaud, Ph.D., who was appointed as an additional examiner selected by respondent pursuant to 18 U.S.C. § 4247(b) (see DE # 40), also testified on behalf of the government. As reflected in the record of this case, respondent elected to represent himself. (See, e.g., DE ## 26, 32, 56, 59, 71, 74.) Although respondent was present at the commencement of the 16 October 2012 hearing, he subsequently chose to leave the

5

courtroom after a brief appearance and had no further involvement in the hearing.[2]

A.   Child Molestation

The court finds that the first criterion for commitment under the Adam Walsh Act, that respondent has "engaged or attempted to engage in sexually violent conduct or child molestation" in the past, is satisfied. 18 U.S.C. § 4247(a)(5). Respondent has received several convictions relating to sexual contact with prepubescent males, and all three experts who testified at the evidentiary hearing agree that these convictions constitute clear and convincing evidence that respondent has engaged in past acts of child molestation.

B.   Serious Mental Illness, Abnormality, or Disorder

To meet its burden of establishing that respondent is "sexually dangerous to others," the government must also prove that respondent "suffers from a serious mental illness, abnormality, or disorder." 18 U.S.C. § 4247(a)(6). In this case, all three experts who testified at the hearing agree that respondent suffers from pedophilia, sexually attracted to males. (Gov't Exs. 1 at 7-8; 3 at 12-13; 6 at 1-2, 8.) The court credits the testimony of the experts with respect to this issue and finds that this condition also constitutes a serious mental illness, abnormality, or disorder for the purposes of the Adam Walsh Act. Pedophilia is a condition that "the psychiatric profession itself classifies as a serious mental disorder." Kansas v. Hendricks, 521 U.S. 346, 360 (1997); see also Wooden, 693 F.3d at 452. Furthermore, it is clear that respondent's pedophilic condition has significantly contributed to his history of sexual offending and has caused harm to others. Accordingly, the court concludes that the government has proven by clear and convincing evidence that respondent currently suffers from pedophilia, which is a serious mental

---

[2] For this reason, the court has chosen to deviate from its standard practice of announcing its ruling on the government's civil commitment petition in open court.

illness, abnormality, or disorder.

C.   Serious Difficulty Refraining

To meet its burden of establishing that respondent is "sexually dangerous to others," the government must also prove that respondent, if released, "would have serious difficulty in refraining from sexually violent conduct or child molestation" as a result of his serious mental illness, abnormality, or disorder. 18 U.S.C. § 4247(a)(6). The determination under this prong requires the court to consider respondent's volitional control over his actions understood in relation to his mental illness, and it is also informed by the constitutional constraints on the civil commitment scheme. In Kansas v. Crane, 534 U.S. 407 (2002), the United States Supreme Court held that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficulty in controlling behavior." Id. at 413. The Supreme Court noted that this standard allows courts wide discretion in relying on a number of different factors relevant to sexual dangerousness. The standard does not have "a particularly narrow or technical meaning;" nor is it demonstrable with "mathematical precision." Id.

As a result, the court does not construe this criterion for commitment to require proof of any statistical probability of reoffense. The Adam Walsh Act does not ask the finder of fact to determine exactly how likely the respondent is to reoffend, but whether he will have "serious difficulty" in refraining from doing so. "Recidivism rates are circumstantially relevant to the serious difficulty inquiry because offenders who continually expose themselves to punishment may be presumed to have the most difficulty refraining from sexual reoffending." Wooden, 693 F.3d at 461 (citation omitted). But the ultimate question called for by the Adam Walsh Act concerns the self-control of an individual, not the statistical re-arrest patterns of a given

7

population. Id. Thus, the court considers the recidivism rates associated with respondent's actuarial scores,[3] but affords them less weight than respondent's past and current conduct, and the testimony of the experts as a whole.[4]

At the evidentiary hearing, all three experts testified that, in their opinions, respondent will have serious difficulty in refraining from child molestation or sexually violent conduct if he is released. The court finds it highly significant that all three of the experts, including Dr. Plaud, who was selected by respondent as an additional examiner, have reached the same conclusion

---

[3] Dr. Malinek used several actuarial instruments in evaluating respondent. He gave respondent a score of 4 on the Static-99R and a score of 7 on the Static-2002R, both of which place respondent in the moderate-high risk category for sexual reoffense. (Gov't Ex. 3 at 14, 17.) Offenders from a non-routine sample with the same score as respondent on the Static-99R have been found to sexually reoffend at a rate of 15.4% within five years and 22.6% within ten years. (Id. at 16-17.) Offenders from a non-routine sample with the same score as respondent on the Static-2002R have been found to sexually reoffend at a rate of 25.2% within five years and 35.8% within ten years. (Id. at 19.) Dr. Malinek also gave respondent a score of 12 on the Minnesota Sex Offender Screening Tool-Revised, which indicates a high risk for sexual reoffense. (Id. at 19-20.) For individuals with respondent's total score, the expected recidivism rate within six years of release is 30%. (Id. at 20.)

In her expert report, Dr. Ross gave respondent a score of 3 on the Static-99R actuarial instrument. (Gov't Ex. 1 at 9.) However, Dr. Ross revised her score at the evidentiary hearing based on Dr. Plaud's expert report and on his testimony at the hearing regarding respondent's lack of intimate, adult relationships. Dr. Ross testified that she would add one point to respondent's score on the second risk factor of the Static-99R, thereby changing respondent's total score to 4. This score is consistent with the score given by Dr. Malinek on the Static-99R, and it places respondent in the moderate-high risk category for sexual reoffense.

Dr. Plaud used an actuarial instrument called the Multisample Age-Stratified Table of Sexual Recidivism Rates ("MATS-1") to assess respondent's risk of recidivism. Out of a possible 8 points that a sex offender could receive on the MATS-1, Dr. Plaud scored respondent as a 3. (Gov't Ex. 6 at 9.) The eight-year recidivism rate for those receiving this score on the MATS-1 who are sixty years old or over is 2.5%. (Id. at 10.)

[4] In addition to the expert testimony that was presented by the government at the evidentiary hearing, the court notes that respondent has filed an expert report from Dr. John Warren, a psychologist. (DE # 65.) Dr. Warren did not testify at the hearing. Similar to the other three experts, Dr. Warren opined in his report that respondent suffers from pedophilia, sexually attracted to males. (Id. at 1, 4-5.) Dr. Warren also gave respondent a score of 4 on the Static-99R, which is the same score that was given by Dr. Malinek and by Dr. Ross. (Id. at 4, 13.) See note 2, supra. Dr. Warren's report does not appear to provide a direct opinion on the issue of whether respondent will have serious difficulty refraining from child molestation or sexually violent conduct if he is released. Dr. Warren did note that respondent's age and existing medical conditions might contribute to a lower risk of sexual recidivism if respondent were released. (Id. at 2, 5.) He also noted that when respondent's actuarial assessment score was compared with a group of routine correctional sexual offenders with similar actuarial scores, the group was found to have a five-year recidivism rate of 6.6%. (Id.) Nothing in Dr. Warren's report alters the court's conclusion with regard to the third element under the Adam Walsh Act.

8

regarding respondent's sexual dangerousness.[5] All three experts identified several factors that they believe demonstrate respondent's lack of volitional control and considerably increase his risk of sexual reoffense, including his impulsivity and poor self-regulation; his failure to cooperate with supervision; his commission of offenses while under supervision; and his persistence in engaging in risk-taking behaviors despite prior legal sanctions. Dr. Malinek also took note of "the unusual callousness and predation which typified the most recent [set] of offenses; that is, molesting alien children who were homeless and offering them shelter for the purpose of ongoing and years-long sexual victimization." (Gov't Ex. 4 at 4-5.)

In addition to the factors listed above, the court gives significant weight to two other factors that the experts considered in concluding that respondent will have serious difficulty in refraining from child molestation or sexually violent conduct if released. Specifically, the experts emphasized respondent's lack of any sex offender treatment and his denial of his pedophilic condition. As the experts explained at the evidentiary hearing, the evidence in this case demonstrates that respondent suffers from problematic cognitive distortions regarding his pedophilic condition. See Wooden, 693 F.3d at 452-53. Dr. Plaud has reported that during their clinical interview, respondent stated that he is "'a nonviolent, moral, heterosexual male.'" (Gov't Ex. 6 at 2.) Dr. Plaud has further explained that "[t]o this day Mr. Perez denies any pedophilic sexual arousal, and presents himself as a typical heterosexual male, which is entirely inconsistent with his sexual history, including his own admission of not having sexual

---

[5] In his expert report, Dr. Plaud stated his ultimate conclusion as follows: "I cannot opine that Mr. Perez is not a sexually dangerous person at this time." (Gov't Ex. 6 at 3.) However, at the evidentiary hearing, Dr. Plaud affirmatively testified that he believes that respondent meets the criteria for commitment under the Adam Walsh Act.

9

encounters at any time in his life with adult females."[6] (Id.) Respondent's extreme lack of insight and inability to confront the pervasiveness and deviancy of his past behavior supports the conclusion that respondent is a sexually dangerous person.

All three experts testified that they also considered respondent's advancing age as a possible mitigating factor in his risk assessment. However, they determined that there would not be a significant decrease in respondent's estimated risk for sexual recidivism as a function of the interaction between respondent's particular past sexual offending history and his increasing age. Dr. Plaud emphasized the longevity of respondent's sexual offense history and testified that he was unpersuaded that respondent has developed the ability to control his behavior simply as a result of his increased age. The court agrees with and credits the testimony of all three experts with respect to this issue. Thus, the court does not consider respondent's advancing age to be a protective factor that would reduce his risk of sexual recidivism if he is released.[7]

On the record in this case, the court concludes that the government has proven by clear and convincing evidence that respondent suffers from pedophilia. The government has also proven that this condition presently impairs respondent's volitional ability to refrain from deviant behavior and that, absent abatement by effective treatment, would in the future give him

---

[6] Dr. Plaud has also stated that during their clinical interview, respondent did not elect to confirm or deny most of his sexual offense conduct. (Gov't Ex. 6 at 4-5.) With respect to his most recent conviction which occurred in 1993, respondent told Dr. Plaud that he never accepted the presentence report. (Id. at 5.) He also denied that pornography was found in his home at the time of his arrest. (Id.)

[7] Moreover, although the experts recognized the significant amount of time that has passed since respondent was incarcerated for his last sexual offense, they testified that this factor did not override other considerations, such as respondent's past pattern of impulsive, predatory sexual offending in high-risk situations when other people were around or while on supervision; the multiple types of offenses that were committed by respondent; and the escalation in the severity of the sex offenses over time. All three experts further testified that although respondent suffers from several physical ailments, including diabetes and high blood pressure, none of these medical conditions would prevent him from sexually reoffending.

serious difficulty in refraining from child molestation or sexually violent conduct.  Accordingly, the court concludes that the government has met its burden of proving the third element under the Adam Walsh Act by clear and convincing evidence.[8]

### III.  CONCLUSION

For the foregoing reasons, the court finds, by clear and convincing evidence, that respondent is a sexually dangerous person under the Adam Walsh Act.  It is hereby ORDERED that respondent be committed to the custody of the Attorney General for care and treatment pursuant to 18 U.S.C. § 4248.  Respondent's motion to stay his 16 October 2012 hearing (DE # 78) and his emergency motion for an injunction (DE # 81) are also DENIED AS MOOT.[9]

This 13 November 2012.

_____
W. Earl Britt
Senior U.S. District Judge

---

[8] In addition, the court has considered the fact that respondent has been ordered to complete a three-year term of supervised release after he is released from federal custody on his most recent conviction.  (Gov't Ex 8.)  The court finds that the term of supervised release is not sufficient to overcome all of the evidence in this case which demonstrates that respondent will have serious difficulty in refraining from child molestation if released.

It is noteworthy that the Ninth Circuit Court of Appeals has recently held that a term of supervised release is not tolled under 18 U.S.C. § 3624(e) while an individual is detained pursuant to a certification filed by the government under the Adam Walsh Act.  United States v. Turner, 689 F.3d 1117, 1121-26 (9th Cir. 2012).  Although the decision in Turner is not binding authority in this case, the court feels compelled to state that while it has considered respondent's term of supervised release in determining that he is a sexually dangerous person under the Adam Walsh Act, the same conclusion would have been reached even if the length of the supervised release period had not been taken into account.

[9] The court notes that both of these motions were entered on the docket by the Clerk subsequent to the conclusion of the 16 October 2012 evidentiary hearing.